**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| In the Matter of S.S. and A.S., | ) |
| | ) |
| DORAN ANTHONY SATCHEL | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )      No. 1:25-cv-01309 |
| | ) |
| RENE ALEXIS KIZZI SATCHEL | ) |
| | ) |
| Respondent. | ) |
| | ) |

_____

### PETITIONER'S MOTION TO EXPEDITE PROCEEDINGS AND ISSUANCE OF SHOW CAUSE ORDER, INCLUDING TEMPORARY RESTRAINING ORDER, <u>PRELIMINARY INJUNCTION, AND EXPEDITED SCHEDULING ORDER</u>

The Convention on the Civil Aspects of International Child Abduction, done at The Hague on
October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001 *et seq*.

Richard Min, Esq.
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, New York 10170
Telephone: 212-681-6400
Facsimile: 212-681-6999
Email: rmin@gkmrlaw.com

*ATTORNEYS FOR PETITIONER*
*DORAN ANTHONY SATCHEL*

<u>**TABLE OF CONTENTS**</u>

I.    **INTRODUCTION**……………………………………………………………….5

II.   **BACKGROUND**………………………………………………………………….5

III.  **PURPOSES AND PERTINENT PROVISIONS OF THE HAGUE CONVENTION**……………………………………………………………..8

IV.   **PETITIONER IS ENTITLED TO AN EXPEDITED HEARING**…………………..11

V.    **PETITIONER'S PRIMA FACIE CASE**……………………………………...14

      a.  Mandatory Return…………………………………………………………17

      b.  Exceptions to Mandatory Return…………………………………………...17

VI.   **PETITIONER IS ENTITLED TO EX PARTE INJUNCTIVE RELIEF**…………..20

      a.  There is substantial likelihood that Petitioner will ultimately prevail on the merits……………………………………………………………………….21

      b.  Petitioner will suffer irreparable injury unless equitable relief is granted………21

      c.  The threatened injury to Petitioner outweighs any damage an injunction may cause Respondent…………………………………………………………...22

      d.  An injunction, if issued, would not be adverse to the public interest……………23

VII.  **PETITIONER IS ENTITLED TO BE AWARDED COSTS AND LEGAL FEES**...23

VIII. **CONCLUSION AND RELIEF SOUGHT**…………………………………………24

## TABLE OF AUTHORITIES

*CASES*………………………………………………………………………………*PAGES*

*Air France v. Saks*, 470 U.S. 392 (1985)……………………………………………………9

*Alcala v. Hernandez*, No. 4:14-CV-4176-RBH, 2014 WL 5506739 (D.S.C. Oct. 30, 2014)……12

*Baxter v. Baxter*, 423 F.3d 363 (3d Cir. 2005)……………………………………………………16

*Chafin v. Chafin*, 133 S.Ct. 1017 (2013)……………………………………………………………12

*Chocotaw Nation of Indians v. United States*, 318 U.S. 423 (1943)………………………..........9

*Compact Van Equip. Co., Inc. v. Leggett & Platt, Inc.,* 566 F.2d 952 (5th Cir. 1978)…………..21

*De La Riva v. Soto*, 183 F. Supp. 3d 1182 (M.D. Fla. 2016)……………………………………19

*England v. England,* 234 F.3d 268 (5th Cir. 2000)………………………………………………19

*Friedrich v. Friedrich*, 78 F.3d 1060 (6th Cir. 1996)……………………………………………16

*Laguna v. Avila,* No. 07-CV-5136, 2008 WL 1986253 (E.D.N.Y. May 7, 2008)………………19

*Lopez v. Alcala*, 547 F.Supp.2d 1255 (M.D. Fla. 2008)……………………………….......12, 19

*Gitter v. Gitter*, 396 F.3d 124 (2d Cir. 2005)……………………………………………………11

*Holder v. Holder*, 392 F.3d 1009 (9th Cir. 2004)………………………………………………13

*In re D.T.J.*, 956 F. Supp. 2d 523 (S.D.N.Y. 2013)……………………………………………17

*Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242 (11th Cir. 2002)..20

*Monasky v. Taglieri*, 140 S.Ct. 719 (2020)………………………………………………………21

*Morgan v. Morgan*, 289 F. Supp.2d 1067 (N.D. Iowa 2003)……………………………………22

*Moreau v. White*, No. 4:24-CV-857, 2025 WL 227793 (E.D. Tex. Jan. 17, 2025)………………19

*Mendoza v. Miranda*, 525 F.Supp.2d 1182 (C.D. Cal. 2007)……………………………………19

*Rivera Rivas v. Segovia*, No. 2:10–CV–02098, 2010 WL 5394778 (W.D.Ark. Dec, 28, 2010)…19

*Sale v. Haitian Ctrs. Council*, 509 U.S. 155 (1993)……………………………………...........9

*Shalit v. Coppe*, 182 F.3d 1124 (9th Cir.1999)……………………………………………………11

*Trudrung v. Trudrung*, 686 F. Supp. 2d 570 (M.D.N.C. 2010)…………………………………19

*Tsai–Yi Yang v. Fu–Chiang Tsui*, 499 F.3d 259 (3d Cir.2007)…………………………………..19

*Zajaczkowski v. Zajaczkowska*, 932 F. Supp. 128 (D. Md. 1996), *aff'd* by 1997 U.S. App. LEXIS 10154 (4th Cir. 1997)……………………………………………………………………………13

OTHER AUTHORITIES

The Convention on the Civil Aspects of International Child Abduction……………………*passim*

International Child Abduction Remedies Act, 22 U.S.C. §§ 9001-9010 (1989)……………*passim*

Uniform Child Custody Jurisdiction and Enforcement Act………………………………………12

FED. R. CIV. P. 65……………………………………………………………………….........20

Petitioner, Doran Anthony Satchel ("Mr. Satchel" or "Petitioner"), respectfully submits this Motion for the scheduling of an expedited hearing and other relief related to the Verified Petition for the Return of the Children to Canada ("Petition" or "Verified Petition").[1]

## I.    INTRODUCTION

Petitioner seeks relief from this Court, in the form of an order for the return of the Children to Canada under the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or the "Convention").  Oct. 25, 1980, T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98 (a copy of the Hague Convention is attached as Exhibit A to the Verified Petition; ECF No. 1-1). The objects of the Convention are as follows: (1) to secure the immediate return of children wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States.  Convention, art 1.  Specifically, the Petition seeks an order for the return of the Children, under Articles 8 (providing a right of action to a person exercising rights of custody) and 12 (providing for the return of the child as a remedy) of the Hague Convention, as well as under the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001-9010 (a copy of ICARA is attached as Exhibit B to the Verified Petition; ECF No. 1-2).

## II.    BACKGROUND

The facts are fully laid out in the Verified Petition but are recited here succinctly for context.

---

[1]    Petitioner relies upon the facts he has verified in his Petition for the Return of the Children to Canada pursuant to the Hague Convention filed under The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (the "Hague Convention" or the "Convention") and the International Child Abduction Remedies Act ("ICARA"). *See* T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, *reprinted* in 51 Fed. Reg. 10493 (1986), text available at: https://www.hcch.net/en/instruments/conventions/specialised-sections/child-abduction (last accessed March 10, 2025); 22 U.S.C. § 9001 *et seq.* (2016).  ECF No. 1.

The parties are the parents of the subject Children. Petitioner is a citizen of Jamaica and was born in Jamaica. Respondent is a Canadian and Guyanese citizen and was born in Canada.

Mr. Satchel moved to Canada in 1991 and has remained there since. The Children have never resided in the United States before.

The parties met in Barrie, Ontario in 2006, and entered a romantic relationship in 2009. Their first child, N.S., was born in January 2009.[2] Thereafter, on or about July 10, 2010, the parties were married in Guyana.

The subject Children, S.S. and A.S., were born in September 2014 and June 2017, respectively. They were born in Ontario, Canada, and have resided there exclusively until their wrongful removal and retention in New York in June 2024.

The Children were fully acclimated, involved, and integrated in all aspects of daily life in Ontario, Canada. They were enrolled in school in Canada. They participated in extra-curricular activities and sports in Canada. For example, A.S. played touch football and S.S. played soccer. All the children had friends in school and had playdates on a frequent basis. All the Children developed an active social life in Canada.

Petitioner suffered injuries leading to his unemployment in or around 2018 and 2019. As a result of his unemployment, Petitioner became the primary caretaker of the Children. He would stay home with the Children while Respondent would attend a co-op work placement in Ontario.

In August 2022, the parties began facing marital problems which ultimately led to their separation in or about January 2023. Notwithstanding, they later reconciled in or about March 2023. The parties remained in a relationship up until the time of removal and retention.

---

[2] N.S. is not subject to this case as the Hage Convention only applies to children under the age of 16. Convention, art. 4.

The family lived in an apartment in Roche court, Mississauga, Ontario, for approximately eight years. In or about August 2023, the parties paid a $200,000 deposit on a property in Mississauga, Ontario, which was intended to be the family home. Approximately a month later, the sale of this property fell through.

On September 1, 2023, the landlord of the parties' apartment in Roche court, Mississauga, filed for a hearing with the Landlord and Tenant Board, because Ms. Satchel was not paying the rent on the apartment as expected.

On October 25, 2023, the parties were served with a notice to vacate and were told to leave their apartment in Roche court, Mississauga. Subsequently, the family lived out of hotels, paying approximately $5,000 per month, due to Ms. Satchel's failure to pay rent, until approximately March 2024.

Thereafter, in March 2024, the family moved in with Petitioner's aunt, Kerry Ann Goldburn, in a detached house in Hamilton, Ontario. The parties and the children continued to reside as a family in Petitioner's aunt's home until June 26, 2024, on which the Respondent wrongfully removed and retained the Children in New York from Canada.

In or around the spring of 2024, the parties began researching potential homes in Georgia, where Ms. Satchel's brother resides, with the plan to possibly relocate there if they were able to secure housing. During this period, they identified a piece of land that they were interested in acquiring in Georgia and began the process to acquire that property.

In June 2024, Ms. Satchel told her husband that she could travel to Atlanta, Georgia to close the deal on the property. Mr. Satchel agreed that Ms. Satchel could take the Children to Georgia on the condition that they return to Canada within two weeks.

On or about June 26, 2024, upon information and belief, instead of taking the Children to Atlanta, Georgia, Ms. Satchel took the Children to New York. Ms. Satchel called Mr. Satchel around this time and informed him that they would stay with her mother in New York. Thereafter, Ms. Satchel cut off contact for several days. Mr. Satchel never gave his consent nor agreed to the Children relocating to New York.

Since August 2024, the Petitioner's access to his Children has been significantly disrupted by Respondent. Upon information and belief, Ms. Satchel enrolled the Children in school in Brooklyn in September 2024.

Additionally, upon information and belief, the Children and Respondent are living in a small home, in which the Children sleep on the couch together while the Respondent sleeps on a blow-up bed. Upon information and belief, the parties' oldest child is taking care of her two younger brothers.

In November 2024, Petitioner filed for divorce and child custody in Canada. Ms. Satchel has not participated in these proceedings.

In February 2025, Ms. Satchel blocked Mr. Satchel on WhatsApp, which was his only means of accessing his Children. The last time Mr. Satchel had access to his Children was on February 22, 2025.

The Hague Convention was drafted for this precise circumstance – "[t]o address the problem of international child abduction during domestic disputes." *Monasky v. Taglieri*, 140 S.Ct. 719, 723 (2020).

## III. PURPOSES AND PERTINENT PROVISIONS OF THE HAGUE CONVENTION

The Convention on the Civil Aspects of International Child Abduction (the "Convention" or the "Hague Convention") came into effect in the United States on July 1, 1988, and was ratified in Canada in July 1, 1988. Essentially, it is an international treaty designed to prevent abduction or

wrongful retention from a parent absconding with a child and running to another jurisdiction to litigate custody. Indeed, the Federal implementation of this accord, in Section 9001(a)(2) of the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001-9010 (1989), includes the expressed Congressional finding that "[p]ersons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention."

The Convention is to be given uniform international interpretation. 22 U.S.C. § 9001. The opinion of sister signatories to the Convention are entitled to significant weight. *Air France v. Saks*, 470 U.S. 392, 404 (1985). "Treaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." *Chocotaw Nation of Indians v. United States*, 318 U.S. 423, 431-32 (1943); *Saks*, 470 U.S. at 396; *Sale v. Haitian Ctrs. Council*, 509 U.S. 155, 155 (1993).

Article 1 of the Convention states that the Convention's goals are:

(a)     to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

(b)     to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

Article 3 of the Convention provides, in pertinent part, that:

The removal or the retention of a child is to be considered wrongful where –

(a)     it is in breach of rights of custody of a person . . . under the law of the State in which the child was habitually resident immediately before the removal or retention; and

(b)     at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph (a) above are those as determined in the state of the habitual residence of the child and may arise in particular by operation of law or by

reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

Article 4 of the Convention provides that the Convention "shall apply to any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights."

Article 5(a) of the Convention provides that, within the meaning of the Convention, "rights of custody shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence."

In Article 14, the Convention also dictates that "[i]n ascertaining whether there has been a wrongful removal or retention within the meaning of Article 3, the judicial or administrative authorities of the requested State may take notice directly of the law of, and of judicial or administrative decisions, formally recognized or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable."

In the primary source of interpretation for the Convention, the Explanatory Report, [3] Professor E. Pérez-Vera noted that any exceptions to the return of the child to her habitual residence:

> . . . are to be interpreted in a restrictive fashion if the Convention is not to become a dead letter. In fact, the Convention as a whole rests upon the unanimous rejection of this phenomenon of illegal child removals and upon the conviction that the best way to combat them

---

[3]    Elisa Perez–Vera was the official Hague Conference reporter, and her explanatory report is "'recognized by the Conference as the official history and commentary on the Convention and is a source of background on the meaning of the provisions of the Convention available to all States becoming parties to it.'" *Shalit v. Coppe*, 182 F.3d 1124, 1127–28 (9th Cir.1999) (quoting Legal Analysis of the Hague Convention on the Civil Aspects of International Child Abduction, 51 Fed.Reg. 10503 (1986)). This Court has recognized it as "an authoritative source for interpreting the Convention's provisions," *Gitter v. Gitter*, 396 F.3d 124, 130 (2d Cir. 2005).

at an international level is to refuse to grant them legal recognition. The practical application of this principle requires that the signatory States be convinced that they belong, despite their differences, to the same legal community within which the authorities of each State acknowledge that the authorities of one of them—those of the child's habitual residence are in principle best placed to decide upon questions of custody and access.  As a result, a systematic invocation of the said exceptions, substituting the forum chosen by the abductor for that of the child's residence, would lead to the collapse of the whole structure of the Convention by depriving it of the spirit of mutual confidence which is its inspiration.

## IV.    PETITIONER IS ENTITLED TO AN EXPEDITED HEARING

The Hague Convention contemplates an outside limit of six (6) weeks for the determination of the merits of a wrongful removal or retention case from the date of filing. Convention, art. 11.

ICARA therefore establishes that Hague Convention cases should not follow the standard civil action schedule.   Rather, Contracting States "shall use the most expeditious procedures available":

> Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention.  For this purpose they shall use the most expeditious procedures available.

> *            *            *

> The judicial or administrative authorities of Contracting States shall act *expeditiously* in proceedings for the return of children.

> If the judicial or administrative authority has not reached a decision *within six weeks* from the date of commencement of the proceedings, the applicant or the Central Authority of the requested State, on its own initiative or if asked by the Central Authority of the requesting State, shall have the right to request a statement of the reasons for the delay . . .

Convention, arts. 2 and 11 (emphasis added).

The Supreme Court has recently reiterated that Contracting States to the Convention must "'use the most expeditious procedures available' to return the child to her habitual residence."

*Monasky*, 140 S. Ct. at 724.  "The Hague Convention mandates the *prompt* return of children to their countries of habitual residence."  *Chafin v. Chafin*, 133 S.Ct. 1017, 1028 (2013) (emphasis added).

It is therefore well-settled that Hague Convention cases should not proceed with the issuance of a writ of summons, twenty (20) days for the filing of a responsive pleading and establishment of a scheduling order.  These cases must be expedited and must proceed first with the immediate issuance of a show cause order, then appearance of the respondent and child or children at an initial expedited show cause and scheduling hearing, and then the case proceeds to an expedited evidentiary hearing on the petition for return.

United States federal courts have routinely held that show cause orders are appropriate in these cases.  *See, e.g., Alcala v. Hernandez*, No. 4:14-CV-4176-RBH, 2014 WL 5506739, at *2 (D.S.C. Oct. 30, 2014) ("the court is permitted to implement all necessary procedures 'to prevent the child's further removal or concealment before the final disposition of the petition.'").

Notice of such hearings is to be provided in accordance with notice under inter-state custody laws.  ICARA at § 9003.  In New York, the Uniform Child Custody Jurisdiction and Enforcement Act (the "UCCJEA") is the State's inter-state custody law and provides merely that "notice must be given in a manner reasonably calculated to give actual notice but may be by publication if other means are not effective." DRL § 75-g(1).

Courts around the country have approved this approach.  The United States District Court for the District of Maryland observed and instructed that:

> Unquestionably at the heart of the Convention is prompt action by courts. Convention art. 11 . . . This comports with the obvious desideratum that any dispute involving custody of a child be decided quickly so as to minimize the anxiety and unsettlement of the child and to avoid assimilation of the child into strange environs which could lead to subsequent difficulties in separation.

> The rules of procedure applicable to ordinary civil cases would seem to be at odds with the Convention and ICARA's premium on expedited decision-making.  Twenty days to answer a petition, Fed. R. Civ. P. 12(a)(1)(A), utilization of various discovery devices, Fed. R. Civ. P. 33 (interrogatories); Fed. R. Civ. P. 31 (depositions), and extended trial time work at cross-purposes to the objective of prompt disposition.

*Zajaczkowski v. Zajaczkowska*, 932 F. Supp. 128, 130 (D. Md. 1996), *aff'd* by 1997 U.S. App.

LEXIS 10154 (4th Cir. 1997) (citations omitted).

The United States Court of Appeals of the Ninth Circuit observed and instructed that:

> The Convention imposes a double duty of "the use of the most speedy procedures known to [a State's] legal system" and "that applications are, so far as possible, to be granted priority treatment."  Pérez–Vera Report, supra, ¶ 104.   While we underscore the importance of district courts adjudicating Convention petitions expeditiously, we empathize with the difficulty in reaching speedy, yet thorough, decisions in the face of severely strained judicial resources.
>
> For now, we urge courts to give docket priority to Convention petitions and to seek means of expediting the petitions to the extent possible and practicable.  These cases are always heart-wrenching, and there is inevitably one party who is crushed by the outcome.  We cannot alleviate the parties' emotional trauma, but at a minimum we can hope to provide them and their children with a prompt resolution so that they can escape legal limbo.

*Holder v. Holder*, 392 F.3d 1009, 1023 (9th Cir. 2004).

In addition, 28 U.S.C. § 1657 states, in pertinent part, as follows:

> [T]he court shall expedite the consideration of any action . . . if good cause therefore is shown.  For purposes of this subsection, "good cause" is shown if a right under the Constitution of the United States or a Federal Statute . . . would be maintained in a factual context that indicates that a request for expedited consideration has merit.

Applying Section 1657 here, the Hague Convention is a treaty under Article VI of the

United States Constitution and such cases are governed by statute, namely 22 U.S.C. § 9001, et

seq.  The instant Hague Convention case presents a factual context indicating this request for expedited consideration has merit.  Thus, good cause exists and "the court shall expedite the consideration of" this action.  28 U.S.C. § 1657.

The importance of securing the attendance of Respondent through the mechanism of a Show Cause Order cannot be underestimated.  ICARA is unequivocal that a Hague Convention petitioner can only bring a Hague Convention action in the place where the child is actually located. ICARA at § 9003.

Petitioner recognizes and appreciates that there are numerous other cases pending before this Court.  But for Respondent's wrongful removal and retention of the Children, which caused the filing of this action, Petitioner would not now be seeking expedited issuance of the Show Cause Order and expedited consideration of the merits of this case.

In accordance with the Hague Convention, ICARA, 28 U.S.C. § 1657, and the Supreme Court of the United States' requirement of the use of the most expeditious procedures available, this Court should enter a Show Cause Order forthwith in the form submitted to this Court, setting a date for Respondent, on the first date available on the Court's calendar allowing for full resolution of this matter within six (6) weeks of the date of filing this Request.

## V.   PETITIONER'S PRIMA FACIE CASE

The general framework to establish a case for return under ICARA is to prove by the preponderance of the evidence, that a child has been wrongfully retained within the meaning of the Hague Convention.  22 U.S.C. § 9003(e)(1)(A).  Under the Hague Convention, a removal or retention is considered "wrongful" where:

> (a)   it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

- 14 -

(b)    at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for removal or retention.

Convention, art. 3.

The fundamental inquiry in any case under the Hague Convention is the habitual residence of the children. The habitual residence in turn dictates the local law to be applied in determining the question of custody rights in the habitual residence. The subject Children's habitual residence at the date of removal and retention, within the meaning of the Hague Convention, was Canada. The habitual residence is determined at the point in time "immediately before the removal or retention." Convention, art. 3. To determine the child's habitual residence, courts are to look at the totality of the circumstances specific to each case. *Monasky*, 140 S. Ct. at 723. The Supreme Court noted that the habitual residence inquiry is fundamentally one of "[c]ommon sense." *Id*. at 727.

In the present case, the Children have been living in Canada since they were born. They were enrolled in school and participated in social and extracurricular activities in Canada. Canada was clearly the Children's habitual residence at the time of the wrongful removal and retention, and remains as such, despite Respondent's unilateral decision to wrongfully remove and retain the Children in New York without Petitioner's consent.

The second part of the *prima facie* analysis is determining whether the children's removal or retention in another country is wrongful by the law of the country where the children are from, not where they have been abducted to. Specifically, the Hague Convention provides that the removal is wrongful where "it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention." Convention, art. 3(a). The

purpose of this provision is to make sure that the law of the child's habitual residence follows the child, so the abducting parent does not profit by his or her wrongful act and otherwise restores the status quo before the wrongful removal or retention occurred.

Simply put, the left-behind parent must merely have rights relating to the care of the child and the right to determine where the child lives, and they do not need to be exclusive to him. In this case, Petitioner is the father of the subject Children, and the parties are still legally married. As such, Petitioner had rights of custody pursuant to Canadian law, namely, Article 18 and 20 of the Children's Law Reform Act, at the time of the wrongful removal and retention. [ECF No. 1, at Page 8, Para. 53-56].

Finally, Petitioner must demonstrate that he was exercising his rights of custody or would have been if not for the wrongful removal and retention. Petitioner has always maintained a close relationship with the Children since their birth. Petitioner was the Children's primary caretaker as he would stay home with the Children while Respondent was working and attending school full-time. Therefore, Petitioner was clearly exercising his rights of custody and would have continued to do so if not for Respondent's actions in abducting the Children to New York.

In applying the Convention, courts have generally treated relatively minimal parental involvement as sufficient to establish the exercise of rights of custody. *See, e.g., Baxter v. Baxter*, 423 F.3d 363, 370 (3d Cir. 2005) ("[T]he test for finding the non-exercise of custody rights under the Hague Convention is stringent." (citation omitted)); *Friedrich v. Friedrich*, 78 F.3d 1060, 1066 (6th Cir. 1996) ("[A] person cannot fail to 'exercise' ... custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child. Once it determines that the parent exercised custody rights in any manner, the court should stop—completely avoiding the question whether the parent exercised the custody rights well or

badly." (footnote omitted)); *In re D.T.J.*, 956 F. Supp. 2d 523, 532-33 (S.D.N.Y. 2013) ("The standards applied to evaluating whether a petitioner is exercising custody at the time of removal are instead lenient: They have been held to require fairly minimal activity on the part of a petitioner.").

   a.   Mandatory Return

The Petitioner in a Hague Convention case has the burden of proving wrongful removal under the terms of the Convention by a preponderance of the evidence. 22 U.S.C. § 9003(e)(A). Once this has been determined, if the return proceedings are commenced within one (1) year of the wrongful removal or retention, the return obligation is **absolute**:

> Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial and administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned **shall order the return of the child forthwith**.

Convention, art. 12 (emphasis added).

The return of the Children is not an adjudication of the underlying custody issues. It is simply returning the Children back to the status quo (in Canada) before Respondent resorted to self-help in wrongfully removing them.

   b.   Exceptions to Mandatory Return

A party who opposes the return of the child or children has the burden of establishing one or more exceptions, two of which must be shown by a high burden of proof: clear and convincing evidence.

The first exception that requires clear and convincing evidence is found in Article 13(b) of the Convention. This exception requires that "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable

situation." Convention, art. 13 (b). Petitioner has always had unfettered access to the Children as he was their primary caretaker prior to the abduction and there is no grave risk of return to Petitioner. Indeed, the opposite is true, the longer the Children remain away from the Petitioner, the greater the risk of harm.

The second exception that requires clear and convincing evidence is found in Article 20 of the Convention. This exception requires that return may be refused "if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms." This exception does not apply.

The third exception, contained in Article 12 of the Convention, is inapplicable: if the proceedings were commenced *more than one year* after the wrongful retention *and* the child has become settled in his new environment, the return is not mandatory. However, in this case, whether the Children have become settled (they have not) is irrelevant because this action was initiated by Petitioner less than one (1) year after the wrongful removal and retention. In that situation, " . . . the authority concerned shall order the return of the child forthwith." Convention, art. 12, clause 1.

The wrongful removal and retention in this matter occurred in June 2024; therefore, a year has not passed since the wrongful removal and retention and this exception is inapplicable.

The fourth exception, contained in Article 13 of the Convention, permits the court to decline return if the child has reached sufficient age and maturity that their opinions should be considered by the Court. Hague Convention, art. 13. There is a "'demonstrated disinclination' among courts to defer a child's objection as a basis to deny a petition." *Trudrung v. Trudrung*, 686 F. Supp. 2d 570, 578 (M.D.N.C. 2010).

Additionally, Courts have routinely found that seven-year-old and ten-year-old children, as old as the children subject to this action, lack the sufficient age and maturity necessary to apply this exception. In *De La Riva v. Soto*, 183 F. Supp. 3d 1182, 1200 (M.D. Fla. 2016), the district court found that a seven-year-old child was too young for the exception to apply and that, given the child's young age, the court would have concerns that any such "wishes" or "objections" had been influenced, even if indirectly, by respondent. *See also Moreau v. White*, No. 4:24-CV-857, 2025 WL 227793, at *16 (E.D. Tex. Jan. 17, 2025) (finding that a ten-year-old had "not attained an age and degree of maturity at which it is appropriate to take his views into account."); *Rivera Rivas v. Segovia*, No. 2:10–CV–02098, 2010 WL 5394778, at *6 (W.D.Ark. Dec, 28, 2010) (finding that a seven-year-old girl was "not of sufficient age and maturity to warrant the application of the exception"); *England v. England,* 234 F.3d 268, 272-73 (5th Cir. 2000) (holding thirteen-years old not sufficiently mature for their views to be taken into account); *Lopez v. Alcala*, 547 F.Supp.2d 1255 (M.D. Fla. 2008) (declining a ten-years old's alleged objection to return); *Mendoza v. Miranda*, 525 F.Supp.2d 1182, 1199 (C.D. Cal. 2007) (finding a ten-years old is not of sufficient age and maturity for her view to be taken into account); *Tsai–Yi Yang v. Fu–Chiang Tsui*, 499 F.3d 259, 279 (3d Cir.2007) (finding a ten-year-old considered a border-line genius was not of sufficient age and maturity for her views to be taken into account).

The last exception is also inapplicable. Specifically, Article 13(a) of the Convention places the burden on Respondent to establish that Petitioner either consented and/or acquiesced to the removal or that he had not actually been exercising custody rights at the time of removal and retention. Obviously, Petitioner, by filing this litigation in this Court, refutes any claim that he consented to the present circumstances. *Laguna v. Avila,* No. 07-CV-5136, 2008 WL 1986253, at *7 (E.D.N.Y. May 7, 2008). Simply put, Petitioner only consented to Ms. Satchel

travelling with the Children to Atlanta, Georgia, for a maximum of two weeks to close a deal on a property. Petitioner never consented, nor acquiesced, to the Children relocating to New York.

## VI.    PETITIONER IS ENTITLED TO EX PARTE INJUNCTIVE RELIEF

Under FRCP 65, the Federal Courts are empowered to grant temporary restraining orders and preliminary injunctions. *See* FED. R. CIV. P. 65.  Consistent with Federal Rule 65 and the exigent circumstances that typically exist in Hague Convention cases, Article 2 of the Hague Convention provides: "Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose, they shall use the most expeditious procedures available." October 25, 1980, T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98. The "objects" of the Hague Convention are expressed in Article 1: the prompt return of an abducted child and the protection of the rights of custody. Federal Rule 65 allows this Court to expeditiously promote the Hague Convention's objectives by emergency equitable relief.

Rule 65(b) further provides that "[a] temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party 's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required." FED. R. CIV. P. 65.

ICARA § 9004(a) allows for this Court to take "measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition."

The decision to grant or deny an injunction is "within the sound discretion of the district court." *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002). "A preliminary injunction may be issued to protect the moving party from irreparable injury and to preserve the power of the trial court to render a meaningful decision on the merits." *Compact Van Equip. Co., Inc. v. Leggett & Platt, Inc.,* 566 F.2d 952, 954 (5th Cir. 1978). The Court's task on an application for a preliminary injunction is to find: "(1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if it is issued, would not be adverse to the public interest." *Id.* As explained below, all of the elements for the emergency equitable relief requested herein, including injunctive relief, are satisfied in this case.

     a.   <u>There is substantial likelihood that Petitioner will ultimately prevail on the merits.</u>

As stated in greater detail above, according to the Hague Convention, the removal or retention of a child is wrongful where the removal or retention is in breach of established custody rights defined by the law of the country in which the child was habitually resident immediately before the removal or retention, and where, at the time of removal, these custodial rights were exercised (either jointly or alone) or would have been so exercised but for the removal. art. 3, October 25, 1908, T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98. By virtue of Canadian law, the country of the Children's habitual residence, Petitioner has custodial rights to the Children. Additionally, Petitioner exercised his custodial rights until the wrongful removal and retention. Consequently, Petitioner is likely to prevail on the merits of his action for the return of the Child.

     b.   <u>Petitioner will suffer irreparable injury unless equitable relief is granted.</u>

Given that Respondent has now wrongfully removed and retained the Children in New York and frustrated Petitioner's rights, there is obviously a risk that Respondent will further hide the Children and herself when she learns about this new filing. This is more worrisome considering Petitioner's lack of access to the Children for over nine (9) months and the significant lengths he has endured to speak to his Children.

This is precisely the situation envisaged by the District Court in *Morgan v. Morgan*, 289 F. Supp.2d 1067, 1070 (N.D. Iowa 2003) where construing the Hague Convention and similar provisions under Iowa state law, the district court issued *ex parte* relief because it feared that "if a temporary restraining order is not issued *ex parte*, Mrs. [Respondent] and Mr. [Respondent's boyfriend] will likely flee this jurisdiction with the child upon receiving notice of Mr. [Petitioner's] intent to seek a temporary restraining order preventing them from doing so."

If Respondent flees with Petitioner's children again, there may be even greater difficulty locating her as she will likely engage in even more aggressive and deceptive tactics. Such a state of affairs would qualify as irreparable injury to the Petitioner on any common-sense approach: the separation of a parent from the parent's children is an irreparable injury that can only be rectified by reunion with the children.

The real threat of irreparable injury clearly exists. Petitioner would suffer irreparable injury if the requested relief is not granted. He continues to be separated from his Children. Under these circumstances, emergency equitable relief is authorized under the Hague Convention. ICARA directly speaks to such a remedy. 22 U.S.C. §9004(a) provides that a court may take appropriate measures "to protect the well-being of the child involved *or to prevent the child's further removal or concealment before the final disposition of the petition*." (Emphasis added).

- 22 -

    c.  <u>The threatened injury to Petitioner outweighs any damage an injunction may cause Respondent.</u>

The potential of Petitioner once again losing the Children and/or the Children being abducted by Respondent far outweighs any perceived injury to Respondent. Petitioner asks the Court to restore the status quo: the return of the Children to Canada and the ability to exercise his rights of custody without risk of immediate further abduction.

Having abducted the Children and, through her unilateral, unauthorized conduct, taken them to New York and kept them from their father, Respondent left Petitioner with no choice but to pursue these remedies.

    d.  <u>An injunction, if issued, would not be adverse to the public interest.</u>

Petitioner seeks relief expressly authorized under the Hague Convention, an international treaty ratified as between Canada, the United States, and other contracting states. The relief is further consistent with federal and state law implementing the Convention. There can be no public interest objection raised to the relief sought by Petitioner. The only relevant considerations are whether Petitioner satisfies the requirements of the Hague Convention and the requirements under the Federal Rules of Civil Procedure for the issuance of emergency equitable relief. Those requirements are both satisfied here.

## VII.   PETITIONER IS ENTITLED TO BE AWARDED COSTS AND LEGAL FEES

Article 26 of the Convention provides that:

> Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the

child.

ICARA 22 U.S.C. 9007(b)(3) provides that:

> Any court ordering the return of a child pursuant to an action brought under Section 4 shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees . . . and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

As shown above, Respondent's conduct in violation of Petitioner's rights of custody has been flagrant and willful. Accordingly, it is appropriate that an order by this Court at the end of this action directing the return of the Children to Canada be accompanied by an order directing Respondent to pay Petitioner's costs incurred in connection with this action, in an amount to be determined, upon a showing by Petitioner.

## VIII.   CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, Petitioner asks this Court to grant the following relief:

a.   Pursuant to Article 11 of the Hague Convention on the Civil Aspects of International Child Abduction, setting an expedited hearing on the Verified Petition and communicating that hearing date and time to Petitioner so that Petitioner may provide notice of these proceedings and the hearing to Respondent pursuant to 22 U.S.C. § 9003(c);

b.   Issue an order following the hearing, directing that S.S. and A.S. (the "Children") shall be returned to Petitioner, pursuant to Articles 1(a) and 12 of the Hague Convention on the Civil Aspects of International Child Abduction and Section 4(b) of the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9003(b);

c.   Issue an immediate order prohibiting the removal of the Children from the jurisdiction of this Court, pending a hearing on the merits of the Verified Petition;

d.   Issue an immediate order that Respondent surrender any and all of her passports and all of the passports of the Children;

e.   Issue an order directing Respondent to pay Petitioner for all costs and fees incurred to date by reason of the Children's wrongful removal and retention pursuant to 22 U.S.C. § 9007(b)(3) and the Hague Convention, Article 26; and

- 24 -

 f.  Any such further relief as justice and its cause may require.

Date: March 11, 2025

      Respectfully submitted,

      <u>/s/ Richard Min</u>
      Richard Min, Esq.
      Green Kaminer Min & Rockmore LLP
      420 Lexington Avenue, Suite 2821
      New York, New York 10170
      Telephone: 212-681-6400
      Facsimile: 212-681-6999
      Email: rmin@gkmrlaw.com

      *ATTORNEYS FOR PETITIONER*
      *DORAN ANTHONY SATCHEL*