**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____

| | |
|---|---|
| In the Matter of S.S. and A.S., )<br><br>DORAN ANTHONY SATCHEL )<br><br>Petitioner, )<br><br>vs. )<br><br>RENE ALEXIS KIZZI SATCHEL )<br><br>Respondent. )<br>_____) | No. 1:25-cv-01309 |

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on**
**October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001 _et seq._**

Before the Court is the Verified Petition for the Return of the Children to Canada (the

"Petition") (ECF No. 1). The Court directed Respondent or her counsel to show cause before

this Court on March 17, 2025 as to why an order should not be made and entered granting

the Petitioner his requested relief in his Motion to Expedite (ECF No. 5) pursuant to the

Hague Convention and the International Child Abduction Remedies Act ("ICARA") (ECF

No. 6).

On March 13, 2025, service of the pleadings and this Court's order to show cause

was effectuated upon Respondent (ECF No. 8). On March 17, 2025, counsel for Petitioner

appeared. There was no appearance from Respondent.

It is this __27th__ day of March, 2025:

ORDERED that the United States Marshals Service shall proceed to Respondent's residence,

retrieve the passports of the subject children, S.S. and A.S., and deliver them to the Clerk of the Court

for safekeeping pending the resolution of this proceeding. Respondent's residence is located at

420 MacDonough Street, Brooklyn, New York 11233; and it is

FURTHER ORDERED that the United States Marshals Service shall serve on Respondent, if she is present, copies of the attached Petition For Return and Order to Show Cause.

*Brian M. Cogan*
Hon. Brian M. Cogan

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

In the Matter of S.S. and A.S.,     )
 )
DORAN ANTHONY SATCHEL    )
 )
         Petitioner,    )
 )
vs.     )    No. <u>25-CV-1309       </u>
 )
RENE ALEXIS KIZZI SATCHEL   )
 )
        Respondent.    )
_____)

## <u>VERIFIED PETITION FOR RETURN OF THE CHILDREN TO CANADA</u>

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001 _et seq_.**

### I.  Preamble

1.     This petition is brought by Doran Anthony Satchel ("Mr. Satchel" or "Petitioner"), to secure the return of his children, S.S., born September 29, 2014, and A.S., born June 30, 2017[1] (the "Children"), who were, without Petitioner's consent or acquiescence, wrongfully removed and retained from Canada to the Eastern District of New York by the Children's mother, Respondent Rene Alexis Kizzi Satchel ("Ms. Satchel" or "Respondent").

2.     This petition is filed pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[2] (hereinafter the "Hague Convention" or "Convention") and the International Child Abduction Remedies Act (hereinafter "ICARA") 22 U.S.C. § 9001 _et seq_.  The Convention came into effect in the United States on July 1, 1988, and was ratified

---

[1] The parties have another child, N.S., born on January 24, 2009, who was also wrongfully removed and retained in New York from Canada but who turned 16 years of age in January 2025, and therefore is not subject to this Petition as she does not fall under the scope of the Hague Convention.

[2] T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, _reprinted in_ 51 Fed. Reg. 10493 (1986), a copy of which is attached hereto as Exhibit A.

in Canada in July 1, 1988.  Copies of the Hague Convention and ICARA are annexed hereto as **Exhibit A** and **B,** respectively.

3.      The Convention is a treaty between sovereign states and theretofore entitled to the same weight and deference as the Constitution of the United States.

4.      The objects of the Convention are as follows: (1) to secure the immediate return of children wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States.  Convention, art. 1.

5.      The Hague Convention applies to cases in which one parent wrongfully removes or retains her or his child, who is under the age of 16 years, from the child's "habitual residence" in breach of the other parent's custodial rights, which were being exercised at the time of the wrongful removal and retention of the child. Hague Convention, Art. 3.

6.      Petitioner respectfully requests that pursuant to Articles 1(a) and 12 of the Convention, this Court order that the subject Children be returned to Canada, the Children's habitual residence.

## II.  Jurisdiction and Venue

7.      This Court has jurisdiction pursuant to 22 U.S.C. § 9003(a) (jurisdiction under the Hague Convention) and 28 U.S.C. § 1331 (federal question jurisdiction).

8.      Venue is proper pursuant to 22 U.S.C. § 9003 and 28 U.S.C. § 1391(b) because, upon information and belief, the Children and Respondent are residing at 420 MacDonough St, Brooklyn, NY 11233 in the Eastern District of New York; and because this case involves the removal and retention of children under the ages of 16 from their habitual residence of Canada to the Eastern District of New York.

### III.  Facts

9.      The parties are the parents of the subject Children, whom are citizens of Canada. Petitioner is a citizen of Jamaica and was born in Jamaica. Respondent is a Canadian and Guyanese citizen and was born in Canada.

10.     Mr. Satchel moved to Canada in 1991 and has remained there since. He has always lived in Ontario, Canada.

11.     The parties met in Barrie, Ontario in 2006, and began their relationship in 2009.

12.     The parties' first child, N.S., was born in January 2009.

13.     Mr. Satchel and Ms. Satchel were married on or about July 10, 2010, in Guyana.

14.     The parties' second child, S.S., was born in September 2014 and is now ten years old.

15.     The parties' third child, A.S., was born in June 2017 and is now seven years old.

16.     All the parties' children were born in Ontario, Canada, and resided there exclusively prior to the wrongful removal and retention in June 2024. The Children's maternal and paternal family members also reside in Ontario, Canada.

17.     The Children were fully acclimated, involved, and integrated in all aspects of daily life in Ontario, Canada. They participated in extra-curricular activities and sports in Canada. For example, A.S. played touch football and S.S. played soccer. All the children had friends in school and had playdates on a frequent basis. All the Children developed an active social life in Canada.

18.     The Children also all attended school exclusively in Canada. S.S. started school at Credit Valley Public School from September 2018 until September 2019. After the Covid pandemic, S.S. attended Peel Virtual Elementary School from September 2022 until June 2023. Then again, S.S. attended Credit Valley Public School from September 2023 until the wrongful removal and retention in June 2024.

19.     A.S., similar to his older brother, attended Credit Valley Public School from September 2021 until June 2022. He then attended Peel Virtual Elementary School from September 2022 until June 2023. A.S. remained at Credit Valley Public School from September 5, 2023, until the time of the wrongful removal and retention.

20.     In June 2018, Petitioner suffered a motor vehicle accident which led to a severe back injury. Petitioner suffered another accident in September 2019. Unfortunately, these accidents led to a period of unemployment for Petitioner, and he was unable to operate his construction company, due to the risk of being paralyzed.

21.     As a result of his unemployment, Petitioner became the primary caretaker of the Children. He would stay home with the Children while Respondent would attend a co-op placement at the board of insurance.

22.     During this period, the parties shared household duties pertaining to the Children.

23.     In August 2022, the parties began facing marital problems which ultimately led to their separation in or about January 2023. Notwithstanding, they later reconciled in or about March 2023. The parties remained in a relationship up until the time of removal and retention.

24.     The family lived in an apartment in Roche court, Mississauga, Ontario, for approximately eight years.

25.     On August 11, 2023, the parties paid a $200,000 deposit on a property municipally described as 4217 Bridlepath Trail, Mississauga, Ontario, which was intended to be the family home. Approximately a month later, the sale of this property fell through.

26.     On September 1, 2023, the landlord of the parties' apartment in Roche court, Mississauga, filed for a hearing with the Landlord and Tenant Board, because Ms. Satchel was not paying the rent on the apartment as expected.

27.     On October 25, 2023, the parties were served with a notice to vacate and were told to leave their apartment in Roche court, Mississauga.

28.     Subsequently, the family lived out of hotels, paying approximately $5,000 per month, due to her failure to pay rent, until approximately March 2024.

29.     Thereafter, in March 2024, the family moved in with Petitioner's aunt, Kerry Ann Goldburn, in a detached house in Hamilton, Ontario.

30.      The parties and the Children continued to reside as a family in Petitioner's aunt's home until June 26, 2024, on which the Respondent wrongfully removed and retained the Children from Canada to New York.

31.     In or around the Spring of 2024, the parties began researching potential homes in Georgia, where Ms. Satchel's brother resides, with the plan to possibly relocate there if they were able to secure housing.

32.     During this period, they identified a piece of land that they were interested in acquiring in Georgia and began the process to acquire that property.

33.     In June 2024, Ms. Satchel told her husband that she could travel to Atlanta, Georgia to close the deal on the property.

34.     Mr. Satchel agreed that Ms. Satchel could take the children to Georgia on the condition that they return to Canada within two weeks.

35.     On or about June 26, 2024, upon information and belief, instead of taking the Children to Atlanta, Georgia, Ms. Satchel took the Children to New York. Ms. Satchel called Mr. Satchel around this time and informed him that they would stay with her mother in New York. Thereafter, Ms. Satchel cut off contact for several days.

36.     On July 7, 2024, Mr. Satchel called Ms. Satchel and demanded that she and the Children return to Canada, yet she refused to do so and hung up the phone. Mr. Satchel never gave his consent nor agreed to the children relocating to New York.

37.     Since August 2024, the Petitioner's access to his Children has been significantly disrupted by Respondent.

38.     Upon information and belief, Ms. Satchel enrolled the Children in school in Brooklyn in September 2024.

39.     Upon information and belief, the Children and Respondent are living in a small home, in which the children sleep on the couch together while the Respondent sleeps on a blow-up bed. Upon information and belief, the parties' oldest child is taking care of her two younger brothers.

40.     In November 2024, Petitioner filed for divorce and child custody in Canada. Ms. Satchel has not participated in these proceedings.

41.     In February 2025, Ms. Satchel blocked Mr. Satchel on WhatsApp, which was his only means of accessing his children.

42.     The last time Mr. Satchel had access to his children was on February 22, 2025.

43.     Petitioner has rights of custody to the Children as fully set forth below, and he had those same rights of custody on the date Respondent wrongfully removed and retained the Children from their habitual residence of Canada on or about June 26, 2024.

### IV.  Wrongful Removal and Retention of Child by Respondent: Claim for Relief Under the Hague Convention

44.     A removal or retention of a child is wrongful under Article 3 of the Hague Convention if: (a) the removal of retention is in breach of custody rights attributed to a person, institution, or other body, either jointly or alone, under the law of the state in which the child was habitually resident immediately before the removal or retention; and (b) at the time of the removal or retention, those

custody rights were actually exercised, or would have been exercised, but for the removal or retention of the child. *See* Hague Convention, Arts. 3 and 5.

45.     The Children's country of "habitual residence," as defined in Article 3 of the Hague Convention is Canada, which is where the Children habitually resided prior to their wrongful removal and retention to New York beginning on or about June 26, 2024.

46.     The Children's habitual residence is Canada and was Canada on the date that Respondent wrongfully removed and retained the Children in New York.

47.     From the totality of the circumstances perspective, as of the date of removal and retention in June 2024, Canada was the Children's ordinary home.

48.     The Children are fully involved and integrated in all aspects of daily and cultural life in Canada. They attend school and extracurricular activities in Canada. They have a great social life in Canada. They participate in playdates and cultural activities in Canada. They have been living in Ontario, Canada since birth and it is their home.

49.     Petitioner has rights of custody of the Children within the meaning of Articles 3 and 5 of the Convention.

50.     "Custody rights" under the Hague Convention are defined to include "rights relating to the care of the person of the child, and in particular, the right to determine the child's place of residence." *See* Hague Convention, Art. 5(a).

51.     "Custody rights" "may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State." *See* Hague Convention, Art. 3.

52.     At the time of Respondent's wrongful removal and retention of the Children from Canada, the Petitioner had and continues to have rights of custody under Canadian law (Children's Law Reform Act), such that the removal and retention of the Children from Canada is in violation of

Canadian law and is a wrongful removal and retention within the meaning of Articles 3 and 5 of the Hague Convention.

53. The province of Ontario adopted the Hague Convention by way of section 46 of the Children's Law Reform Act, R.S.O. 1990, c. 12 (hereafter, "CLRA"). The wording of the CLRA was amended following the amendments to the Divorce Act, RSC 1985, c3 (2nd Supp), to address 'decision making' instead of custody'.

54. Section 18(5) states that "[u]nless the context requires otherwise, a reference in an Act or regulation to custody of a child, including lawful custody or legal custody of a child, includes reference to decision-making responsibility with respect to the child under this Act." *Id.* at § 18(5).

55. Petitioner's custody rights are conferred by the CLRA. Section 20(1) of the Act provides that ". . . the child's parents are equally entitled to decision-making responsibility with respect to the child." *Id.* at § 20(1). Section 20(2) further provides that "[a] person entitled to decision-making responsibility with respect to a child has the rights and responsibilities of a parent in respect of the child and must exercise those rights and responsibilities in the best interests of the child." *Id.* at § 20(2).

56. Decision-making responsibility is defined under Section 18(1) of the Act as "responsibility for making significant decisions about a child's well-being, including with respect to (a) health; (b) education; (c) culture, language, religion and spirituality, and (d) significant extra curricular activities." *Id.* at § 18(1).

57. Notice is given in this pleading that the Petitioner is relying upon foreign law. Fed.R.Civ.P. 44.1.

58. At the time of the Respondent's wrongful removal and retention of the Children, the Petitioner was exercising custody rights within the meaning of Articles Three and Five of the Convention, in that he is the father of the Children and has exercised custody rights over the Children

since they were born. Petitioner never consented, nor acquiesced, to the Children relocating to the United States.

59.     S.S. was born in September 2014 and will be 16 years of age in September 2031. At the time immediately before the wrongful removal and retention of the Child from Canada, the Child habitually resided in Canada within the meaning of Article 3 of the Convention.

60.     A.S. was born in June 2017 and will be 16 years of age in June 2033.  At the time immediately before the wrongful removal and retention of the Child from Canada, the Child habitually resided in Canada within the meaning of Article 3 of the Convention.

61.     The parties and the Children have resided in Canada since they were born and have never lived in the United States before the wrongful removal and retention.

62.     Petitioner does not know of any person or institution not a party to the proceedings who has physical custody of the Children or claims to have rights of parental responsibilities or legal custody or physical custody of, or visitation or parenting time with the Children.

63.     Following the Respondent's wrongful removal and retention of the Children, the Children are being illegally held in custody, confinement and/or restraint by the Respondent in the Eastern District of New York, where the parties and the Children have never previously resided. Upon information and belief, Respondent is keeping the Children in 420 MacDonough St, Brooklyn, NY 11233.

64.     The subject Children are now seven (7) and ten (10) years old.  The Hague Convention applies to children under 16 years of age and thus applies to these Children.  Petitioner has never consented or acquiesced to Respondent's wrongful removal and retention of the Children in New York.

65.     Petitioner invokes Article 18 of the Convention, which grants this Court plenary power to order the Children's return at any time.

66.     In accordance with the Article 18 equitable return factors set forth in Justice Alito's concurring opinion in *Lozano v. Montoya Alvarez*, 134 S.Ct. 1224 (2014), Petitioner requests that this Court exercise its equitable discretion to return the Children to Canada under Article 18, even if the Respondent establishes one of the Convention's five narrow discretionary exceptions to return under the Convention.

67.     The Children have an interest in returning to Canada, their country of habitual residence. Petitioner has an interest in exercising his Canadian rights of custody in Canada.

68.     The governments of Canada and the United States both have an interest in discouraging inequitable conduct and deterring international child abductions.

## V.  Provisional Remedies

69.     Petitioner requests that the Court issue a Show Cause Order forthwith, ordering the appearance of Respondent before this Court on the first available date on the Court's calendar.

70.     Petitioner further requests that this Court issue a Scheduling Order setting an expedited hearing on the Verified Petition for Return of Children to Canada.

## VI. Attorney's Fees and Costs

71.     Petitioner has incurred attorneys' fees and costs resulting from the Respondent's wrongful removal of the Children.

72.     Petitioner respectfully requests that this Court award him all costs and fees, including transportation costs, incurred to date as required by 22 U.S.C. § 9007.

73.     Petitioner will submit a copy of all expenditures as soon as practicable and possible, and will amend these costs from time to time, according to proof and in light of further expenditure resulting from Respondent's wrongful removal and retention of the Children.

## VII. Notice of Hearing

74. Pursuant to 22 U.S.C. § 9003(c), Respondent will be given notice of any hearing pursuant to New York and any other applicable law.

## VIII. Relief Requested

**WHERETOFORE**, it is respectfully requested that the following relief be granted:

a. Set an expedited hearing on the petition and communicate that hearing date and time to petitioner so that petitioner may provide notice of these proceedings and the hearing pursuant to ICARA Section 9003(c);

b. Issue an immediate order that Respondent surrender any and all of her passports and all of the passports of the Children;

c. Issue an order following the hearing, directing that the Children shall be returned to their Habitual Residence of Canada, pursuant to Article 12 of the Convention;

d. Enter an immediate *ex parte* temporary restraining order prohibiting the removal of the Children from the jurisdiction of this Court pending a hearing on the merits of the Verified Petition, and further providing that no person acting in concert or participating with Respondent shall take any action to remove the Children from the jurisdiction of this Court pending a determination on the merits of this Action;

e. Issue an order directing Respondent to pay Petitioner for all costs and fees incurred to date by reason of the Children's wrongful removal and retention pursuant to 22 U.S.C. § 9007; and

f. Any such further relief as justice and its cause may require.

Date: March 5, 2025

Respectfully submitted,

/s/ Richard Min
Richard Min, Esq.
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, New York 10170
Telephone: 212-681-6400
Facsimile: 212-681-6999
Email: rmin@gkmrlaw.com

*ATTORNEYS FOR PETITIONER*
*DORAN ANTHONY SATCHEL*

11

## **VERIFICATION**

I, Doran Anthony Satchel, solemnly declare and affirm under the penalties of perjury and the laws of the United States of America, that I am the Petitioner in the within action and have read the foregoing Petition and know the contents of the foregoing Petition are true, to the best of my knowledge, except as to those matters alleged upon information and belief.

Dated:  March 5, 2025

_____
Doran Anthony Satchel

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| In the Matter of S.S. and A.S., | ) |
| | ) |
| DORAN ANTHONY SATCHEL | ) |
| | ) |
| Petitioner, | )    No. 1:25-cv-01309 |
| | ) |
| vs. | ) |
| | ) |
| RENE ALEXIS KIZZI SATCHEL | ) |
| | ) |
| Respondent. | ) |

_____)

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001 _et seq._**

  Before the Court is the Verified Petition for the Return of the Children to Canada (the "Petition") [ECF No. 1]. This Order addresses the Petitioner's Motion to Expedite Proceedings and Issuance of Show Cause Order, including Temporary Restraining Order, Preliminary Injunction, and Expedited Scheduling Order. Upon considering the Petition for Return, the Motion to Expedite and for an Issuance of an Immediate Show Cause Order, the Hague Convention, and ICARA, it is this 11th day of March, 2025:

  **ORDERED** that Respondent, Rene Alexis Kizzi Satchel, or her attorneys, show cause before this Court, at the United States Courthouse, United States District Court for the Eastern District of New York, located at 225 Cadman Plaza East, Brooklyn, New York 11201 on the 17th day of March, 2025 at 3 o'clock in the afternoon thereof, or as soon thereafter as counsel can be heard, why an order should not be made and entered granting the Petitioner the following relief:

   a. Pursuant to Article 11 of the Hague Convention on the Civil Aspects of International Child Abduction, setting an expedited hearing on the Petition and communicating that hearing date and time to Petitioner so that Petitioner may

provide notice of these proceedings and the hearing to Respondent pursuant to ==22 U.S.C. § 9003(c)==; and

b.  Issue an order following the hearing, directing that S.S. and A.S. (the "Children") shall be returned to Petitioner, pursuant to Articles 1(a) and 12 of the Hague Convention on the Civil Aspects of International Child Abduction and Section 4(b) of the International Child Abduction Remedies Act ("ICARA"), ==22 U.S.C. § 9003(b)==; and

c.  Issue an immediate order prohibiting the removal of the Children from the jurisdiction of this Court, pending a hearing on the merits of the Verified Petition; and

d.  Issue an immediate order that Respondent surrender any and all of her passports and all of the passports of the Children; and

e.  Issue an order directing Respondent to pay Petitioner for all costs and fees incurred to date by reason of the Children's wrongful removal and retention pursuant to ==22 U.S.C. § 9007(b)(3)== and the Hague Convention, Article 26; and

f.  Any such further relief as justice and its cause may require; and it is further

**ORDERED** that pending the hearing and determination of this application and the entry of an Order thereon, the Respondent, or any person acting in concert or participation with Respondent, is prohibited from removing the Children, S.S. and A.S., born in 2014 and 2017 respectively, from the state of New York; and it is further

**ORDERED** that pending the hearing and determination of this application and the entry of an Order thereon, Respondent shall immediately deposit with the Clerk of the Court any and all passports or other travel documents in the names of S.S. and A.S., which shall be held for safekeeping by the Court; and it is further

**ORDERED** that personal service of a copy of this Order, together with the copies of the papers upon which it was brought on Respondent before the _13th_ day of March, 2025, shall be deemed sufficient.

**IT IS SO ORDERED.**

Dated this <u>11th</u> day of <u>March</u>, 2025

*Brian M. Cogan*
Hon. Brian M. Cogan
United States District Judge